# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EDWARD BAKER JENNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:26cv-00464 |
| | ) |
| MDC CONTRACTING, LLC, a Michigan limited liability company d/b/a High Format, and NATURAL STONE, LLC, a Florida limited liability company | ) ) ) ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff EDWARD BAKER JENNER ("**Plaintiff**" or "**Jenner**"), by his undersigned attorneys, for his Complaint against defendant MDC CONTRACTING, LLC, a Michigan limited liability company d/b/a High Format ("**MDC**" or a "**Defendant**"), and NATURAL STONE, LLC, a Florida limited liability company ("**Natural Stone**" or a "**Defendant**") states as follows:

## THE PARTIES, JURISDICTION AND VENUE

1. Jenner is an individual and a citizen of State of Wisconsin. He resides at 3910 Dyer Lake Road in Burlington, Wisconsin (the "**Premises**").

2. MDC is limited liability company organized under the laws of the State of Michigan d/b/a High Format with a principal place of business at 5481 US31 South, Charlevoix, Michigan. MDC is registered to do business and does business in the State of Wisconsin but MDC is not a citizen of the State of Wisconsin. MDC may be served with process through its registered agent Richard Reed, 711 Ralph Lemorande Avenue, Oconto Falls, Wisconsin 54154.

3. MDC is in the business of, among other things, distributing natural stone products to be used in retail installations, including as hardscapes at residential homes. MDC sells natural stone products under various trade names including Azure.

4. Natural Stone is limited liability company organized under the laws of the State of Florda with a principal place of business at 2640 N. Powerline Road, Pompano, Florida. Natural Stone is not a citizen of the State of Wisconsin. Natural Stone may be served with process through its registered agent Baris Balkanli, 2640 N. Powerline Road, Pompano Beach, Florida33069.

5. Natural Stone is in the business of, among other things, selling natural stone products to be used in retail installations, including as hardscapes residential homes, including in the State of Wisconsin. Natural Stone sells natural stone products to MDC, including the natural stone product that MDC sells under the trade name Azure.

6. The Court has personal jurisdiction over MDC because (a) it is engaged in substantial and not isolated activities within the State of Wisconsin, whether such activities are wholly interstate, intrastate, or otherwise, and (b) this matter relates to goods, documents of title, or other things of value actually received by Jenner in the State of Wisconsin from MDC without regard to where delivery to carrier occurred.

7. The Court has personal jurisdiction over Natural Stone because (a) it is engaged in substantial and not isolated activities within the State of Wisconsin, whether such activities are wholly interstate, intrastate, or otherwise, (b) this matter related to an act or omission of Natural Stone in the State of Wisconsin, or (c) this matter relates to goods, documents of title, or other things of value actually received by Jenner in the State of Wisconsin from Natural Stone without regard to where delivery to carrier occurred.

2

64049712.4

8.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

9.     Venue for this matter is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred, or a substantial part of property that is the subject of this action is situated in this judicial district.

## BACKGROUND

10.     Jenner is an owner of the Premises.

11.     In or around July and August 2024, Jenner sought to have a new stone patio installed around his pool at the Premises, including stairs and a walkway from the pool, (the "**Pool Deck**") and a new stone apron installed at the entrance of the home at the Premises (the "**Apron**").

12.     Jenner began discussions with Timothy Richter ("**Richter**"), the President and Lead Designer of Granite Ridge Landscape Company ("**Granite Ridge**") in or around July, 2024, to determine the design and stone material for the Pool Deck and Apron.

13.     On multiple occasions, Jenner expressed concerns to Richter that he wanted to be sure the material used for the Pool Deck and Apron would not get excessively hot or become slippery when wet.

14.     In and or around July and August, 2024, MDC marketed a stone product under the trade name Azure as being appropriate to be installed around a pool and displayed pictures of Azure stone installed around pools in its marketing materials.

15.     In or around July and August, 2024, Richter relayed to Jenner MDC's marketing materials showing Azure stone installed around pools.

3

16.	In or around August, 2024, Richter brought samples of several stone products to Jenner for his review and consideration. Included in those samples was sample of MDC's Azure stone.

17.	Upon reviewing the samples, Jenner liked MDC's Azure stone but expressed his concerns to Richter about whether MDC's Azure stone , when installed around a pool, would become too hot in the sun and slippery when wet.

18.	In or about August, 2024, Richter spoke with Christian Kirby ("**Kirby**"), MDC's Territory Manager for Illinois, Wisconsin, and northwest Indiana Wisconsin to inquire whether MDC's Azure stone would be an appropriate to be installed around the Pool Deck and Apron. Richter specifically advised Kirby that Jenner intended to have MDC's Azure stone installed around a pool. During that call, Kirby advised Richter that MDC's Azure stone would both be appropriate to be installed around a pool because it remains cooler to touch than other stone products and MDC's Azure stone does not get overly slippery compared to other stone products.

19.	In or around August, 2024, Richter relayed to Jenner the information he obtained from Kirby, namely that MDC's Azure stone would both be appropriate to be installed around a pool because it remains cooler to touch than other stone products and does not get overly slippery compared to other stone products.

20.	Jenner reasonably relied on MDC's marketing materials showing MDC's Azure stone installed around pools and reasonably relied on the information Richter relayed to Jenner that he obtained from Kirby, namely that MDC's Azure stone is appropriate to be installed around a pool because it remains cooler to touch than other stone products and does not get overly slippery compared to other stone products, and, on or about August 20,2024, Jenner engaged Granite Ridge to install Azure at the Pool Deck and Apron for a total cost of $100,730.00.

4

64049712.4

21.    Granite Ridge purchased MDC's Azure for the installation at the Pool Deck and Apron directly or indirectly from MDC.

22.    On information and belief, MDC purchased the Azure for the installation at the Pool Deck and Apron from Natural Stone.

23.    In and around August, 2024, Natural Stone advertised that natural stone like Azure as being "resistant to moisture, cold, heat and erosion" and "[t]here is no heat retention and its surface remains cool to the touch" and "[p]avers are slip-resistant making them a perfect addition around a pool area."

24.    In or about December, 2024, Granite Ridge completed its installation of MDC's Azure stone for the Pool Deck and Apron, and Jenner thereafter paid Granite Ridge in full for the same.

25.    In and around June, 2025, Jenner learned that the Azure stone installed for the Pool Deck became too hot to walk on when the sun was out.

26.    In and around June, 2025, Jenner advised Richter that the MDC Azure stone installed for the Pool Deck became too hot to walk on when the sun was out.  Richter advised that Jenner should wet the surface of the Pool Deck to reduce the temperature of MDC Azure stone.

27.    To address the excessive temperature of the Azure stone installed for the Pool Deck, Jenner sprayed water on the Pool Deck but quickly learned that it became too slippery to walk on when it became wet.

28.    In fact, between approximately June 1, 2025 and July 31, 2025, no less than four (4) people slipped and fell on the Pool Deck after it became wet, some suffering minor injuries.

29.    Jenner has had to install remedial measures, including an adhesive layer of sand-infused silicon, across the Azure stone at the Pool Deck and Apron to prevent other people from

5

slipping and falling at the Pool Deck or Apron after it becomes wet.  The cost of these remedial measures has totaled no less than $3,690.00.

30.     On or about July 7, 2025, Richter contacted Kirby to express Jenner's concerns about the excessive temperature of the Azure stone installed for the Pool Deck.  Kirby responded to Richter by requesting an opportunity to provide samples of various stone products, including a new sample of MDC's Azure, to the Premises and thereafter conducting temperature readings of the samples.

31.     On or about August 4, 2025, MDC delivered samples of various stone products, including a new sample of MDC's Azure, to the Premises.

32.     MDC returned to the Premises on August 15, 2025, to conduct temperature readings of the stone samples and the Azure stone installed around the Pool Deck.

33.     MDC recorded a surface temperature of between 128 and 135.5 degrees for the Azure stone installed at the Pool Deck.

34.     A surface temperatures at 135 degrees is considered hot to the touch and hazardous, and approaches the threshold for causing contact burns.

35.     On or about August 27, 2025, Jenner participated in a Zoom meeting with Kirby, MDC's president Josh Manthei, and Natural Stone's National Sales Director, and others to discuss his concerns about the Azure stone installed at the Pool Deck, expressly including that it becomes too hot to the touch and too slippery to walk on when wet.

36.     During that August 27, 2025, MDC's president Josh Manthei advised that MDC purchased the Azure stone from Natural Stone and denied that MDC has any information or knowledge about the temperature characteristics of the Azure stone and stated something to the effect of "we are not experts and just purchase Azure from Natural Stone".

6

37.     Between approximately June 1, 2025 and January 31, 2026, no less than six (6) people and one (1) pet have slipped and fell on the MDC stone installed at the Pool Deck or Apron after it became wet.

38.     In fact, on or about December 15, 2025, Jenner's dog slipped and fell on the Apron after it became wet from melted snow and sustained an injury requiring two surgeries.  Jenner has incurred in excess of $10,001.78 of veterinary bills for these surgeries

39.     Jenner has had install remedial measures, including heated pads, across the Apron to prevent other people or pets from slipping and falling on Apron after it becomes from melted snow.

<u>**COUNT I – FRAUD IN THE INDUCEMENT**</u>
**(MDC)**

40.     Jenner incorporates paragraphs 1 through 39, as though fully set forth herein.

41.     MDC through its advertising made false representations of material fact about the suitability of Azure stone for installation around a pool.

42.     MDC through its agent Kirby made false representations of material fact about the suitability of Azure stone for installation around a pool.

43.     MDC made these false representations with knowledge of their falsity or with reckless disregard of the truth.

44.     MDC made these false representations with the intent to defraud consumers, including Jenner, to purchase Azure stone.

45.     Jenner justifiably relied on MDC's false representations when he agreed to the installation of the Azure stone at the Pool Deck and the Apron.

46.     Jenner has been damaged in an amount of no less than $114,421.78, which is the cost that Jenner incurred for the installation of Azure stone on the Pool Deck and Apron, plus the costs of all remedial measures, plus the costs of the surgeries needed for Jenner's dog.

7

WHEREFORE, plaintiff EDWARD BAKER JENNER is entitled to judgment in his favor and against defendant MDC CONTRACTING, LLC, a Michigan limited liability company d/b/a High Format on Count I of this Complaint in an amount of no less than $114,421.78, plus attorneys' fees and costs, and for such other relief as this Court deems just.

## COUNT II – NEGLIENT MISRTEPRESENTATION
### (MDC)

47. Jenner incorporates paragraphs 1 through 46, as though fully set forth herein.

48. MDC through its agent Kirby made false representations of material fact about the suitability of Azure stone for installation around a pool.

49. MDC through its agent Kirby made these false representations negligently.

50. MDC through its agent Kirby made these false representations with the intent to induce Jenner to purchase Azure stone.

51. Jenner justifiably relied on MDC's false representations when he agreed to the installation of the Azure stone at the Pool Deck and the Apron.

52. Jenner has been damaged in an amount of no less than $114,421.78, which is the cost that Jenner incurred for the installation of Azure stone on the Pool Deck and Apron, plus the costs of all remedial measures, plus the costs of the surgeries needed for Jenner's dog.

WHEREFORE, plaintiff EDWARD BAKER JENNER is entitled to judgment in his favor and against defendant MDC CONTRACTING, LLC, a Michigan limited liability company d/b/a High Format on Count II of this Complaint in an amount of no less than $114,421.78, plus attorneys' fees and costs, and for such other relief as this Court deems just.

## COUNT III – FRAUDULENT REPRESENTATIONS (SECTION 100.18)
### (MDC)

53. Jenner incorporates paragraphs 1 through 52, as though fully set forth herein.

8

54. At all times relevant hereto, Section 100.18(1) of the Wisconsin Code provides, in pertinent part, that:

> No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

55. At all times relevant hereto, Section 100.18(11)(b) of the Wisconsin Code provides, in pertinent part, that "[a]ny person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees . . ."

56. MDC's marketing and advertising of Azure stone installed around a pool contains an assertion, representation or statement of fact which is untrue, deceptive or misleading.

57. Jenner has incurred a pecuniary loss because of MDC's violation of Section 100.18(1) of the Wisconsin Code and, as a result is entitled to recover from MDC such pecuniary loss, together with costs, including reasonable attorney fees.

58. Jenner's pecuniary loss because of MDC's violation of Section 100.18(1) of the Wisconsin Code totals no less than $114,421.78, which is the cost that Jenner incurred for the

9

installation of Azure stone on the Pool Deck and Apron, plus the costs of all remedial measures, plus the costs of the surgeries needed for Jenner's dog.

59.     Jenner is also entitled to recover from MDC the attorneys' fees and costs he incurs in this matter.

WHEREFORE, plaintiff EDWARD BAKER JENNER is entitled to judgment in his favor and against defendant MDC CONTRACTING, LLC, a Michigan limited liability company d/b/a High Format on Count III of this Complaint in an amount of no less than $114,421.78, plus attorneys' fees and costs, and for such other relief as this Court deems just.

<u>**COUNT IV – FRAUDULENT REPRESENTATIONS (SECTION 100.18)**</u>
**(NATURAL STONE)**

60.     Jenner incorporates paragraphs 1 through 59, as though fully set forth herein.

61.     Natural Stone's marketing and advertising of Azure stone installed around a pool contains an assertion, representation or statement of fact which is untrue, deceptive or misleading.

62.     Natural Stone's marketing and advertising of stone like Azure stone as being "resistant to moisture, cold, heat and erosion" and "[t]here is no heat retention and its surface remains cool to the touch" and "[p]avers are slip-resistant making them a perfect addition around a pool area" contains an assertion, representation or statement of fact which is untrue, deceptive or misleading.

63.     Jenner has incurred a pecuniary loss because of Natural Stone's violation of Section 100.18(1) of the Wisconsin Code and, as a result is entitled to recover from MDC such pecuniary loss, together with costs, including reasonable attorney fees.

64.     Jenner's pecuniary loss because of Natural Stone's violation of Section 100.18(1) of the Wisconsin Code totals no less than $114,421.78, which is the cost that Jenner incurred for the installation of Azure stone on the Pool Deck and Apron, plus the costs of all remedial measures, plus the costs of the surgeries needed for Jenner's dog.

10

65.     Jenner is also entitled to recover from Natural Stone the attorneys' fees and costs he incurs in this matter.

WHEREFORE, plaintiff EDWARD BAKER JENNER is entitled to judgment in his favor and against defendant NATURAL STONE, LLC, a Florida limited liability company on Count IV of this Complaint in an amount of no less than $114,421.78, plus attorneys' fees and costs, and for such other relief as this Court deems just.

Respectfully submitted,

EDWARD BAKER JENNER

By:     */s/ David P. Vallas*
        One of its Attorneys

David P. Vallas (WIED Bar No. 6273499)
Honigman LLP
321 North Clark Street, Suite 500
Chicago, Illinois 60654
Tel: 312-701-9305
dvallas@honigman.com

11